IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LURA ANN GRIMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:04-CV-00916-DRB |
| vs. ) | [WO] |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Administratively denied on her application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq*., Lura Ann Grimes ("Grimes") received a requested hearing before an administrative law judge ("ALJ"). Because the Appeals Council rejected review, the ALJ's unfavorable decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained, the court concludes that the Commissioner's decision should be affirmed.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422

(11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986). The Commissioner's decision will be reversed on plenary review if the decision applies incorrect law or fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Grimes, age 40 at the time of the hearing, has an eighth grade education. She has not engaged in substantial gainful work since June 1, 1995, the alleged onset date for reportedly disabling depression, high blood pressure, and back problems. The ALJ determined the following "severe impairments" for Grimes but concluded that considered individually and in combination, they did not meet or equal in severity any listed impairment:

2

> *history of lumbar strain with sciatica, carpal tunnel syndrome, depression, anemia, social anxiety, dysthymic disorder, borderline intellectual functioning, hypertension, organic mental disorder, affective disorder, polysubstance disorder, personality disorder and status post hysterectomy.*

Finding Grimes' allegations of pain and functional limitations "not credible", the ALJ rested his non-disability conclusion on a determination that she retains the residual functional capacity ("RFC") to perform both her past relevant work and a significant number other jobs existing in the regional and national economy.

### III.  ISSUES

Grimes specifies three issues for review:

1. Whether the ALJ erred by failing to properly evaluate [her] according to Listing 7.02 Anemia [the "*chronic anemia*" listing erroneously referenced as Listing 7.03 in Grimes' brief];[1]

2. Whether the ALJ erred at step four by finding that [her] past work was prior relevant work when it was not substantial gainful activity;  and

3. Whether the ALJ erred by basing his determination of [her] residual functional capacity on (1)a medical source opinion that stated [she] could do "the work she has been doing", which was only performed on a part-time basis and (2) medical expert testimony which did not have the benefit of reviewing the entire record.

Each issue triggers the court's ultimate inquiry: *Is the Commissioner's disability decision supported by proper legal standards and substantial evidence?  See Bridges v.  Bowen*, 815 F. 2d 672 (11th Cir. 1987).

### IV.  DISCUSSION

Grimes' first-specified error attacks the ALJ's step-three analysis while the remaining issues

---

[1] It appears that Grimes argued only to the Appeals Council and not to the ALJ that her anemia satisfied the severity requirements of Listing §7.02A. (R. 350-363.)

challenge his assessment at step four of the five step sequential evaluation process. See 20 C.F.R. §416.920 and *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004). Even if the ALJ incorrectly found Grimes' past housekeeping jobs to be substantial gainful work activity, this claimed fourth step error would not warrant remand because the ALJ proceeded to make an unchallenged step-five assessment which alternatively grounded his disability determination. Thus, the discussion which follows omits Grimes' complaint regarding the ALJ's assessment of her past relevant work.

### A.   Consideration of Listing §7.02A for Chronic Anemia

#### 1.   *Burden of Proof*

To claim the presumption of disability available for a severe impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Appendix 1 to Subpart P, the claimant has the burden of proof to establish that his condition (a) falls within this Listing of Impairments and (b) satisfies both the medical and durational requirements specified for the particular impairment listed. As the Court emphasized in *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990):

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.[2]

Listing §7.02 defines "chronic anemia" as "hematocrit persisting at 30 percent or less due to any cause", *with*:

---

[2]"Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *see Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986); *see also* 20 C.F.R. §416.926.

>A. Requirement of one or more blood transfusions on an average of at least once every 2 months; *or*
>B. Evaluation of the resulting impairment under criteria of the affected body system.

According to the Section 7.00 preamble for all the hematological disorders categorized, including chronic anemia, "[c]hronicity is indicated by persistence of the condition for at least 3 months. The laboratory findings cited must reflect the values reported on more than one examination over that 3-month period." §7.00B.

    *2.    Evidentiary Analysis*

Grimes claims Listing §7.02A disability based upon essentially undisputed evidence of, "her chronic anemia with hematocrit levels (HCT) constantly below 30% for four years" and blood transfusions received in September 2001 and December 2001.[3] Similarly unchallenged is the opinion of Dr. James Anderson, a medical expert, that Grimes' anemia resolved in March 2002, about a month following her hysterectomy.

Citing *Barnhart v. Walton*, 535 U.S. 212 (2002), the Commissioner underscores that "both the impairment and the inability to work must last 12 continuous months" and argues: "even if arguably the listing may have been met for 4 months after her application", Grimes is not disabled because her "condition was resolved prior to the expiration of 12 continuous months."[4] Grimes grounds her claim on the undisputed evidence of her "HCT levels constantly below 30% for **four years**", and she reasons:

---

[3]*Pl.'s Br.* at 6-7. The parties do not agree on the relevance of Grimes' hematocrit levels in 1997 and 1998. Though the SSA will develop Grimes' medical history for at least the 12 months preceding her application on October 18, 2001, the Commissioner notes correctly that the record reflects " no evidence of blood transfusions as required by the listing" during the period of 1997 through 1998. (*Def.'s Br.* at n. 2).

[4]*Def.'s Br.* at 6.

5

> This satisfies the first prong of Listing 7.02. . . The second prong ... requires one or more blood transfusions and does **not** specify that a claimant must have a blood transfusion once every two months **for one full year**. The preamble to the listing defines the duration requirement of chronicity as "*indicated* by **persistence of the condition for at least 3 months**." . . . Ms. Grimes' anemia has lasted four years and has required more than one blood transfusion, and these transfusions were two months apart. . . . In addition, Ms. Grimes had two surgeries to correct her anemia. . . As a result, she arguably meets listing 7.02.[5]

Diligent research uncovered neither case law precedent nor SSA rulings construing the "requirement of one or more blood transfusions on an average of at least once every two months." Nonetheless, logic plainly compels the court to embrace the Commissioner's contention that the requisite "average" contemplates an averaging over a period of twelve months. Because § 7.02A does not include a specific statement of duration, the court finds instructive the default language in the explanatory regulation for the entire Listing of Impairments, 20 C.F.R. § 416.925(a):

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent an adult from doing any gainful activity...*Most of the listed impairments are permanent or expected to result in death, **or a specific statement of duration is made**. For all others, the evidence must show that the impairment has lasted or is expected to last **for a continuous period of at least 12 months.***

(emphasis supplied). Grimes concedes that her chronic anemia did not last for a continuous period of at least twelve months; rather, it "was listing level for four months during the relevant period and two months prior to the relevant period." She cites no legal authority in urging that the ALJ, nevertheless, "should have considered whether she equaled Listing 7.0[2] for a six month period prior to her application, during the period she alleged."[6] Thus, the court finds that substantial

---

[5] *Pl.'s Br.* at 7 (emphasis in original)

[6] *Pl.'s Reply Br.* at 2.

evidence supports the ALJ's evaluation of Grimes' anemia for listing-level severity. [7]

Grimes offers two other propositions to support her claim of listing-level disability: first, her anemia *alone* is of equivalent severity to the listing; *second,* the combination of work-related restrictions created by both her anemia – sedentary work with environmental limitations – and her other ten severe impairments, equals Listing 7.02.[8] Neither withstands scrutiny.

Grimes cites her submission of "nine objective tests which prove her HCT levels have consistently remained in the 10% to 20% range even after blood transfusions." The Commissioner maintains that Grimes is bound "to provide objective medical findings that support each of the criteria for the impairment under which [Grimes] claims equivalency [and] the durational requirements...must still be met."[9] The Commissioner is correct. *See Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987). A claimant cannot qualify for benefits under the equivalence step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

---

[7] *See Price v. Comm'r of Soc. Sec.*, No. 99-6431, at *4-5(6th Cir. Oct. 27, 2000)( finding no disability for claimant who satisfied Listing 4.04 for only one month); *McCoy v. Chater*, 81 F. 3d 44, 46 (6th Cir. 1995)(finding insufficient for listing-level disability evidence that claimant met listing requirements for three months); *Rivera v. Barnhart*, No. 04-30131-KPN, at *16-17 (D. Mass. March 14, 2005) (holding that averaging of occurrences to satisfy a listing include a continuous twelve month period); *Wiederholt v. Barnhart*, No. 02-2313- GTV, 2003 U.S. Dist. LEXIS 9883, at *12-13 (D. Kan. May 27, 2003), *aff'd in part, rev'd in part and remanded on other grounds*, 121 Fed. Appx. 833, 837 (10th Cir. 2005) ("The relevant question, however, is not whether she is suffering from depression, but whether her depression was disabling for the requisite twelve-month period.").

[8] Grimes did not cite to any record evidence – and the court finds none – for the claimed work restrictions created by her anemia, any other severe impairment, or any non-severe impairment.

[9] *Pl.'s Br.* at 8; *Def.'s Br.* at 8.

In concluding that Grimes' severe and not severe impairments, considered singularly and in combination, are not of listing-level severity, the ALJ relied properly on the expert opinions of Dr. Anderson and Dr. McKeown. Grimes challenges this reliance because these doctors did not review, and render supplemental opinions regarding, post-hearing records.[10] Review by the court, however, lends credence to the Commissioner's conclusion that these medical records "do[] not contain information related to complaints or diagnoses of anemia after February 2002" or any documentation of additional blood transfusions. Grimes "cites to no information in this [post-hearing] evidence which renders the opinions...invalid, or which would have required the ALJ to ask the doctor to re-evaluate his testimony."[11] Moreover, the record reflects the ALJ's due consideration of these records.[12]

The court concludes, therefore, that substantial evidence supports the ALJ's step three finding that Grimes' anemia and other severe impairments, considered singularly and in combination do not meet or equal in severity any listed impairment; accordingly, remand is unwarranted for any of the errors asserted.

### B.     Assessment of RFC

Grimes challenges the ALJ's formulation of both her physical and mental RFC.  The ALJ's based his formulation of her physical RFC, Grimes contends, upon: (a) an "erroneous interpretation" of the opinion of Dr. Bendinger and (b) the medical expert testimony of Dr. James Anderson, who

---

[10] Grimes submitted records from: (1) St. Joseph's Hospital for emergency room treatment rendered from May 20, 1997 through September 9, 1997, and (2) treating physician, Dr. Karen Kinsell, for treatment on May 10, 2000 through June 30, 2003. (R. 153-344).

[11] *Def.'s Br.* at 7-8.

[12] R. 15.

lacked a complete record. Regarding the assessment of her mental RFC, Grimes attacks the ALJ's reliance on expert opinions rendered by Dr. Doug McKeown, purportedly on an incomplete record, and by Dr. Hinton, a non-examining, State Agency psychological consultant.

Assessment of RFC falls squarely within the ALJ's province, but it must be based upon all relevant evidence of the claimant's ability to work despite impairments. *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997); SSR 96-8p ( relevant evidence includes "medical history, medical signs and laboratory findings, lay evidence, effects of treatment, reports of daily activities, and medical source statements"); SSR 96-5p ( " If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").

Based upon the analytical discussion which follows, the court determines that none of Grimes' specified errors provides a basis for remand.

### 1. *Physical RFC*

Grimes' treating physician, Dr. Richard Bendinger, Jr., D.O., conducted a physical evaluation on February 12, 2002, and expressed this relevant opinion:

> Based on my medical findings, the patient's ability to do work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling is basically unimpaired. She does have hypertension and some chronic low back pain. *** She does have chronic back pain and an 8th grade education, however, she should be able to do the kind of work she has been doing without great difficulty. ( R. 169)

Based on this opinion by Dr. Bedinger, the ALJ made a step four assessment of Grimes' ability to perform past work as a housekeeper. As explained (*supra*, Part IV at 4), Grimes' claim that the ALJ erroneously designated her housekeeping jobs as "substantial gainful work activity" need not be resolved. Instead, the court considers this doctor's opinion only in the context of the ALJ's

9

finding of Grimes' step five finding that Grimes can perform other work on a full-time basis. Grimes urges the court to interpret Dr. Bendinger's opinion as medical proof that she can work only on a part-time basis for three hours, as she did in her housekeeping work. Such an interpretation requires impermissible speculation, and the court confines its conclusion to Dr. Bendinger's unambiguous view that Grimes retained an unimpaired ability to perform the work-related activities indicated.

Though Dr. Anderson did not review the medical records submitted after the hearing – the basis for Grimes' contention that he based his opinion on an incomplete record – the court has confirmed that these records could not have altered his opinion regarding Grimes' physical limitations.[13]

### 2. *Mental RFC*

The ALJ gave "substantial weight to the opinions of Dr. Hinton and Dr. McKeown regarding [Grimes'] mental residual functional capacity [because] [t]hey are specialists in their fields of study and their opinions are based on the objective evidence of record and are consistent."[14]

Again pointing to post-hearing submissions not reviewed by any of the testifying doctors, Grimes suggests that these records might have prompted a different opinion by Dr. McKeown. After

---

[13] Post-hearing submissions include emergency room records which document Grimes' lower back pain and treatment with medications; however, the hearing record contained her comprehensive physical evaluation in 2002, which included assessments by Dr. Bendinger of her back, neck, locomotor, and neurologic, and physical limitations. (R. 165-171). Similarly flawed is Grimes' contention that post-hearing records of lumbar spine x-rays administered on May 22, 1997 may have changed Dr. Anderson's opinion mind; in fact, this radiologic evidence disclosed no acute abnormality. (R. 270-274). Finally, the ALJ analyzed all the post-hearing records, including those documenting Dr. Kinsell's diagnosis of cervical neuropathy and duly indicated his reasons for not assigning controlling weight to Dr. Kinsell's opinion. ( R.12, 15-18).

[14] R. 21.

review, the court concurs with the Commissioner that "the evidence of mental treatment submitted after the hearing merely shows care for the same general conditions identified in the testimony, with no additional credible limitations."[15]

Regarding Grimes' contention that the opinions of Dr. Hinton, a State Agency psychologist and specialist in mental health issues, did not warrant "substantial weight", the court finds no evidentiary basis for accepting Grimes' complaint that Dr. Hinton grounded his opinion solely on the consultative psychological evaluation of Dr. J. Walter Jacobs, dated April 1, 2002, and failed to review records from treating physicians. Nothing in the record casts doubt on the ALJ's conclusion that Dr. Hinton's opinions are consistent with the record. In sum, as is the case with his formulation of Grimes' physical RFC, substantial evidence supports the ALJ's assessment of Grimes' mental RFC.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment will be entered.

Done this 26th day of January, 2006.

                                                 **/s/ Delores R. Boyd**
                                               DELORES R. BOYD
                                               UNITED STATES MAGISTRATE JUDGE

---

[15] *Def.'s Br.* at 13. The ALJ's assessment of Grimes' mental RFC took into account Grimes' mental health treatment, including prescribed medication documented in post-hearing records ( R. 12, 15, 17), and her history at Spectra Care. ( R. 316, 318; 238-252). Grimes testified regarding her non-compliance with Spectra Care sessions, a fact which moots her insistence that these post-hearing records provided necessary documentation for such non-compliance. *See Pl.'s Reply Br.* at 6; R. 399.